FILE COPY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

08 CV 2794



JUDGE SULLIVAN

-----------------------------------------x

DIANE MICELI,

                Plaintiff,

Civil Action No.

    -against-

DAVID J. GOLD, P.C,
in his capacity as an attorney for
the judgment creditor, Lincoln Financial Services, Inc.
and Ashwood Financial Inc., and
LINCOLN FINANCIAL SERVICES, INC., and
ASHWOOD FINANCIAL INC.,

           Defendants.

**COMPLAINT AND JURY
DEMAND,**

MAR 17 2008

U.S.D.C. ....N.Y.
CASHIERS

-----------------------------------------x

## PRELIMINARY STATEMENT

1.    This is an action for actual and statutory damages brought by an individual consumer

for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*,

which prohibits debt collectors from engaging in abusive, deceptive, or unfair practices.

Plaintiff's only source of income is Social Security which is exempt from debt collection. 42

U.S.C. § 407(a). At the time of this action, Plaintiff also received child support payments on

behalf of her son, but these payments were the property of the son and were not collectable by the

defendant debt collectors. Defendant Gold, an attorney hired on behalf of defendant Lincoln

Financial Services, Inc., restrained and then executed upon (took) all the child support and

exempt Social Security payments from plaintiff's bank account. After losing this exempt

income, plaintiff retained South Brooklyn Legal Services who sent proof to the defendants demonstrating that the taken moneys were child support belonging to the son and exempt Social Security payments. Despite such proof, the defendants refused to return the executed upon money unless the plaintiff entered into a payment plan whereby she paid $50 a month to satisfy the debt. Only by obtaining a state court order four months after the execution was plaintiff able to regain her exempt payments.

## JURISDICTION AND VENUE

2.    This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331, and supplemental jurisdiction over the state claim pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

3.    Venue in this district is proper under 28 U.S.C. § 1391(b) because the defendants transact business here, and some of the conduct complained of occurred here.

## PARTIES

4.    Plaintiff Diane Miceli is 50 years old and resides at 23 Sparrow Lane, Levittown, NY 11756 in the county of Nassau.

5.    Defendant DAVID J. GOLD, P.C, (Hereinafter "Gold") is a law firm located at 116 John St., Suite 3110, New York, NY 10038.

6.    Defendant Gold is a law firm engaged in the business of collecting debts, including debt purchased by debt buyers for pennies on the dollar, by filing civil collection lawsuits on behalf of its clients. Defendant Gold collects such debts regularly and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6). Indeed, Defendant Gold brought suit against an employee for allegedly damaging his reputation within the debt collection industry. In the Matter

of David J. Gold, 642 N.Y.S.2d 926 (App. Div. 2d Dept. 1996)(Censuring attorney Gold for his

violations of disciplinary rules prohibiting conduct prejudicial to administration of justice and

conduct that adversely reflects on lawyer's fitness to practice law.)

      7.   Defendant LINCOLN FINANCIAL SERVICES, INC., is located at 6319-A S East

Street, Indianapolis IN 46227 and is licensed to do business in New York.  It is controlled by, or

owned by, or merged with Ashwood Financial Inc.  .

      8.   Defendant ASHWOOD FINANCIAL, INC. (hereinafter "Ashwood") is located at

6319-A S East Street, Indianapolis IN 46227, and is licensed to do business in New York.

      9.   Defendant Lincoln Financial and Ashwood Financial are debt buyers whose

principal purpose is debt collection or who regularly collects debts for another.

      10.   A debt buyer who tries to collect the debt it purchased is a debt collector within the

meaning of the FDCPA.  Kimber v. Federal Financial Corp., 668 F.Supp. 1480 (M.D.Ala.,1987)

(Creditors "merely in the business of collecting stale debts rather than extending credit[] ... are no

longer true creditors [exempted by the FDCPA] but [are] debt collectors who . . . fall within the

group Congress intended the Act to cover.")


## STATUTORY FRAMEWORK
### The Fair Debt Collection Practices Act

      11.   Congress enacted the Fair Debt Collection Practices Act ( FDCPA ) to stop "the

use of abusive, deceptive and unfair debt collection practices by many debt collectors."  15

U.S.C. § 1692(a).

      12.   To that end,  a "debt collector may not engage in any conduct the natural

consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.

13.    Nor may a debt collector "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

14.    A debt collector is further prohibited from using of any "false, deceptive, or misleading . . . means in connection with the collection of any debt." 15 U.S.C. § 1692e(10).

## Social Security and Child Support Payments

15.    The Social Security Administration ("SSA") administers the Social Security Disability program which pays monthly cash benefits to former wage earners who are disabled. 42 U.S.C. § 405 et seq.  The overarching objective of the Social Security system is "the protection of its beneficiaries from some of the hardships of existence."  United States v. Silk, 331 U.S. 704, 711 (1947).

16.    Congress protects Social Security payments from debt collection.   More specifically,  42 U.S.C. § 407(a) provides that "none of the moneys paid or payable . . . under this title shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ." Section 407(a) thus is designed to ensure that a Social Security recipient who is unable to support herself due to disability has "uninterrupted use of moneys received as benefits."  Finberg v. Sullivan, 634 F.2d 50, 63 (3d Cir. 1980.)

17.    The exempt character of SSI and Social Security payments is not lost when the money is deposited into an account, or moved from one account to another.  Philpott v. Essex County Welfare Board, 409 U.S. 413, 415 (1973).

18.    Child support payments are the property of the child, not the custodial parent, and cannot be used to satisfy the debt of the custodial parent.  Shipman v. City of New York Support Collection Unit, 183 Misc.2d 478, 703 N.Y.S.2d 389, (Supreme Court, Bronx County, NY 2000.)

## NEW YORK STATE POST JUDGMENT COLLECTION PROCEDURES

19.    Article 52 of the N.Y. Civil Practices Law and Rules ("N.Y. CPLR") sets out the procedures creditors must use in attempting to collect money judgments.

20.    An attorney for the judgment creditor can discover assets of a judgment debtor by simultaneously serving an information subpoena with restraining notice upon a bank by personal service, regular mail or electronic format.   N.Y. CPLR §§ 5222, 5224.

21.    If a bank has assets of the debtor, it must restrain (freeze) the account and answer the information subpoena.  N.Y. CPLR §§ 5222(a) and 5224.

22.    The account of the debtor remains frozen (no checks or cash may be withdrawn) for one year unless one of three things happens. First, the creditor and debtor reach an agreement whereby the creditor releases the account conditionally (for partial, full or monthly payments) or unconditionally (e.g. because the account contains statutorily exempt moneys or moneys belonging to another.) Second, a court orders the rescission or modification of the restraining notice. N.Y. CPLR § 5222(b). Third, the creditor orders a Marshal or Sheriff to take the money from the bank account and deliver it to the creditor. N.Y. CPLR §§ 5230 and 5233. The later is called an "execution."  N.Y. CPLR §§ 5230) and 5232.

23.    The creditor must mail or personally deliver a copy of the restraining notice and a

"notice to judgment debtor" to the judgment debtor within four days of service of the restraining notice on the garnishee. N.Y. CPLR § 5222(d).

24.    The "notice to judgment debtor" advises the debtor that his or her funds have been restrained and that certain property, such as Social Security and child support, are exempt from debt collection efforts.  N.Y. CPLR § 5222(d) and (e).

25.    The "notice to judgment debtor" is designed to insure that the potentially exempt moneys are not taken. The "notice to judgment debtor" explains that if the debtor thinks his or her account contains any money that is exempt, the debtor may contact the attorney who issued the restraining notice, or Legal Aid.  N.Y. CPLR § 5222(e).  The notice further cites N.Y. CPLR §§ 5239 and 5240 as the statutory "procedure for determining a claim to an exemption."

26.    Sometimes the creditor knows where the debtor banks without having to use an information subpoena with restraining notice.  In such situations, the creditor may order the marshal or sheriff to execute upon (take the amount of the judgment from) the bank account without having to first restrain it.  In such situations, the creditor's lawyer is not required to send a "notice to judgment debtor" informing the debtor of her exemption rights.

27.    Rather, when the creditor's lawyer orders the execution of the bank account without having first restrained it, the Marshal or Sheriff, not the creditor, must advise the debtor of her exemption rights by sending a  5222(e) notice within four days of receipt of the execution. NY CPLR § 5232 ( c).

28.    In such situations, the creditor makes the Marshal or Sheriff aware of its obligation to serve the "notice to judgment debtor" by omitting a statement in his execution notice that the 5222(e) notice was previously served. NY CPLR § 5232( c).

## FACTS RELATED TO THIS ACTION

29.    Plaintiff Diane Miceli is 50 years old and lives with her 21 year old son, Vincent, who works as a delivery person for a pizza restaurant.

30.    Ms. Miceli worked for about 15 years as a legal secretary.  Around 1993 Ms. Miceli became disabled by Lupus and subsequently qualified for Social Security disability benefits.

31.    Ms. Miceli's only income is $936 in Social Security Disability benefits ($915 in 2007 when the events that gave rise to this action transpired.)

32.    Because her rent is quite high ($1500 a month), her son Vincent contributes a large portion of his weekly earnings (he earns about $300 a week)  towards rent and other household expenses (electricity, phone, food, etc.)

33.    Until late May 2007 when he turned 21, Vincent received $298 monthly in child support payments which he also contributed towards the household expenses.

34.    While working as a legal secretary in the early 1990's, Ms. Miceli obtained a credit card from Bank One and incurred bills.   After becoming disabled by Lupus in 1993 , her income was reduced significantly and she was unable to pay her Bank One credit card bill.

35.    Sometime thereafter, Bank One sold its debt to Lincoln Financial Services, a debt buyer.

36.    On December 19, 2000, Defendant Gold, on behalf of Defendant Lincoln Financial Services, sued Ms. Miceli for $8176.96 in the District Court of the County of Nassau, Second District, Hempstead Part under index #2342/01.

37.    On information and belief, the action was time barred by New York's six year

statute of limitations. NY CPLR § 213.

38.    While Ms. Miceli received notice of the law suit, she did not respond as she was unaware that she had a statute of limitations defense.

39.    Judgment in favor of Defendant Lincoln Financial Services was entered by default on May 29, 2001.

40.    In an attempt to collect the judgment, Defendant Gold issued a restraining notice, dated March 14, 2007 on North Fork Bank.  Consequently, Ms. Miceli's North Fork checking account was frozen on or about March 20, 2007.

41.    This was the account into which Diane Miceli's Social Security check and Vincent's child support payments were electronically deposited.

42.    These deposits are self identifying on bank statements as "NASSAU COUNTY CH SUP DEPT" and "US TREASURY 303 SOC SEC."

43.    At the time of the restraint (March 20, 2007), the account contained $176.78.  Of that, $92.00 was electronically deposited child support payments made for the benefit of Vincent on March 15, 2007.   The remaining $84.78 were earnings from the son, Vincent that was transferred on March 10, 2007 into Ms.  Miceli's account so she could pay some household bills.

44.     Within four days of serving the restraining notice, Defendant Gold was required to mail or personally deliver to Ms. Miceli a copy of the restraining notice and a "Notice to Judgment Debtor" form advising her that Social Security and Child Support were exempt from debt collection and how to raise an exemption claim.  N.Y. CPLR § 5222(d).

45.    Ms. Miceli never received such a notice.

46.    Rather, Ms. Miceli learned about the restraint from a North Fork Bank teller who

gave her the phone number for the Lincoln Financial's attorney, David J. Gold.

47.    In late March or early April, 2007, Ms. Miceli contacted Defendant Gold's office by phone and explained that her only income was Social Security and child support payments on behalf of her son.  Defendant Gold agreed to release her account if Ms. Miceli's bank records supported her assertion that the account was exempt. Ms. Miceli promptly sent Defendant Gold her two most recent bank statements.

48.    After sending the bank records, Ms. Miceli left many messages with Defendant Gold that were not returned.

49.    Because of the restraint, previously authorized electronic payments and written checks were rejected.  By April 18, Ms. Miceli had incurred $180 (check) in bank fees that were deducted by North Fork from her frozen account.

50.    Although Ms. Miceli's account was frozen, preventing any withdrawals (other than bank fees), it remained opened for deposits.  Consequently, by April 18, 2007 a total of $1263.00 in child support and Social Security payments were electronically deposited.

51.    As a result of the restraint, Ms. Miceli was unable to pay April's rent.

52.    Because Defendant Gold was not returning Ms. Miceli's phone calls, Ms. Miceli followed the advice of Defendant Gold's secretary, and e-mailed him on April 20, 2007.  In her e-mail, Ms. Miceli complained that Defendant Gold had said he would release her funds 10 days earlier, but to date had not.  She further pleaded "I have a severe medical condition called SLE, Lupus" and that holding her exempt money was illegal.

53.    On April 23, 2007, Defendant Gold responded in an email to Ms. Miceli.  He stated he had reviewed the paperwork that Ms. Miceli had forwarded but that it failed to prove that her

account was exempt from debt collection.  He wrote that her exempt deposits were "commingled with other funds and it is impossible to determine exactly what is happening with the bank account."  Consequently, Defendant Gold recommended that "we attempt to settle the matter with monthly payments and I will release the account once we have reached an agreement."

54.    By May 1, 2007, Ms. Miceli was able to stop direct deposit of her Social Security check into her frozen North Fork account.

55.    However, Ms. Miceli and her son Vincent were unable to change the child support payments to paper checks.  Consequently, child support checks continued to be electronically deposited into the account every two weeks in April and May 2007.

56.    Having fallen behind in her rent, and needing access to her son's child support payments and her April Social Security payment, Ms. Miceli became desperate.   On May 6, 2007, Ms. Miceli sent a conciliatory email message to Defendant Gold.  "In light of the fact that I am medicated because of a few conditions I do not always think clearly.  Therefore, I am willing to settle this matter with you on a payment plan.  Would $50.00 per month be acceptable to you in this matter?"

57.    Defendant Gold responded with an email stating he was on vacation for a week and would respond to her offer when he returned.

58.    On May 16, 2007, Defendant Gold called Ms. Miceli and stated payment of $50.00 a month would be acceptable.

59.    Despite his oral agreement, Defendant Gold on or about May 18, 2007 filed a notice of execution, dated May 1, 2007 upon a New York City Marshal.  The notice, accompanied by a $40.00 check dated May 18, 2007 payable to the Marshal, ordered the Marshal to "immediately"

take all the funds in Ms. Miceli's bank account as partial satisfaction of the judgment.

60.    In his notice of execution dated May 1, 2007, Defendant Gold failed to state that he had previously served the 5222(e) notice appraising Ms. Miceli of her exemption rights.

61.    By May 24, 2007, $1660 in exempt Social Security and child support payments had been electronically deposited into Ms. Miceli's restrained account following the March 20, 2007 freeze.  No other money had been deposited.  In addition, the bank had deducted $270 in bounced check fees during that same time.

62.    Because of the"First In, First Out"accounting rule, the $270 in bank fees was deducted first from the $176.78 balance that was restrained on March 20, 2007.  80 NY Jur NEGOTIABLE INSTRUMENTS AND OTHER COMMERCIAL PAPER § 243 ("What amounts to withdrawal of credit."); I-T-E Imperial Corporation-Empire Div. v. Bankers Trust Co., 73 A.D.2d 861 (1st Dep't 1980), aff'd, 51 N.Y.2d 811 ( New York 1980)("The rule in New York appears to be . . . a rule of first in, first out . . . so that the earliest withdrawal is deemed applicable to the earliest deposit.")

63.    Thus, North Fork's bank fees had consumed all of the original balance frozen by the plaintiff, leaving only exempt, direct deposit Social Security or Child support payments made after the restraint was imposed.

64.    In response to the execution notice, North Fork bank deducted on May 29, 2007 the entire contents of Ms. Miceli's bank account ($1566.78) all of which was Social Security or Child support payments that could not be collected by the creditor.

65.    Ms. Miceli learned of the Marshal's actions on or about June 1, 2007 when she received a "notice to judgment debtor" from the Marshal, dated May 21, 2007.  The envelope

containing the notice was post-marked May 31, 2007.

66. The May 21, 2007 notice was sent in compliance with NY CPLR § 5232( c) which requires the Marshal to send this notice when the creditor's execution notice fails to indicate that it served the 5222(e) notice advising the debtor of his exemption rights.

67. Ms. Miceli called the Marshal the same day she received the notice seeking help in getting her exempt money back. The Marshal's office advised her that she needed to go to court in Hempstead to protect her money.

68.    Ms. Miceli then made several calls to matrimonial and landlord lawyers she knew seeking representation. Eventually, she received a referral to the New York City bar association which referred her to South Brooklyn Legal Services whom she contacted on June 7, 2007.

69.    On June 12, 2007, a summer intern at South Brooklyn Legal Services, Matthew Crawford, faxed banking records and a memorandum of law to Defendant Gold demonstrating that the $1566.78 consisted only of Social Security and child support payments, and thus was exempt from debt collection and should be returned. At this point, SBLS believed the account was restrained, while in fact it had been executed upon.

70.    Despite frequent calls from SBLS Intern Crawford to Defendant Gold, the two had their first and only conversation on the matter on June 27, 2007. Defendant Gold stated he had reviewed the Crawford memo and bank documents, that a court could decide whether the account contained only exempt money, that he did not want to go to court on the matter, and that he would immediately release the account if Ms. Miceli entered a payment plan of $50.00 a month as she had offered before hand.

71.    SBLS Intern Crawford responded that he believed the account had to be

unconditionally released.  Defendant Gold suggested that SBLS ask Ms. Miceli if she was willing to enter into an agreement.

72.    On June 28, 2007, SBLS faxed a second letter to Defendant Gold rejecting the offer and reiterating Defendant Gold obligation to unconditionally release the account.

73.    Defendant Gold never responded to the June 28, 2007 letter.

74.    On June 28, 2007, the Marshal sent a check to Defendant Gold which constituted the proceeds of execution.

75.    Unaware that the account had been executed upon, on July 17, 2007, Johnson Tyler, an attorney at SBLS, left a message with Defendant Gold 's secretary and faxed a letter requesting again that Defendant Gold  unconditionally release the account.

76.    Having heard nothing from Defendant Gold, Ms. Miceli filed an order to show cause on July 30, 2007.  By this point, Ms. Miceli and her counsel had learned that the Defendants had actually taken the exempt moneys via the execution.

77.    Dan Bailey, the president of Defendant Lincoln Financial, filed an affidavit in opposition to this motion dated August 23, 2007.

78.    Dan Bailey is listed as the "principle Executive Office" who accepts New York Department of State service on behalf of Lincoln Financial and Ashwood Financial Inc.

79.    In its affidavit opposing the order to show cause, Defendant Lincoln Financial pointed to bounced check debits and credits following the restraint and disingenuously argued that the credits constituted new deposits from unknown sources.

80.    Defendant Lincoln Financial also argued that plaintiff had slept on her right to make an exemption claim.

81.    Following oral argument on August 29, 2007, the civil court issued a decision on October 9, 2007 in which it ordered the Defendants to return the executed moneys within ten days. <u>Lincoln Financial Services, Inc., v. .Miceli</u>, 17 Misc.3d 1109(A)(Nassau Ct Civ. Court 2007), 2007 WL 2917242.

82.    The court found "unequivocal proof" that "the moneys upon which the plaintiff executed are readily identifiable as exempt property" based on the bank records and accounting principles presented to the Defendants in June 2007. <u>Id</u>.

83.    The court further found that the Defendants had not complied with their obligation to issue a 5222(e) notice informing the debtor of her exemption rights, as constitutionally required. <u>Id</u>.

84.    Despite the civil court order that Ms. Miceli's exempt money be returned by October 19, 2007, the Defendants did not do so until December 20, 2007.

85.    As a direct result of Defendants' actions, Ms. Miceli suffered physical harm. Her lupus, which was stable prior to the restraint, worsened. She developed a facial rash, headaches and other lupus related symptoms. Her doctor responded by changing her medication to include a high dosage of prednisone. When that did not help, she was prepared for an experimental chemo-therapy in December 2007.

86.    As a direct result of Defendant's actions, plaintiff Miceli also suffered emotional distress.

### CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

87.    Plaintiff repeats and re-alleges and incorporates by reference preceding paragraphs

1 - 85.

88.    15 U.S.C. § 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

89.    15 U.S.C. § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

90.    Defendants violated §§ 1692d and 1692f when they refused to release exempt money they had frozen pursuant to NY CPLR § 5222 unless the plaintiff entered into a payment plan.

91.    As a direct and proximate result of Defendants' violation, Plaintiff has sustained actual damages in an amount to be proved at trial.

**SECOND CLAIM FOR RELIEF**

92.    Plaintiff repeats and re-alleges and incorporates by reference preceding paragraphs 1 - 85.

93.    15 U.S.C. § 1692d provides that a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

94.    15 U.S.C. § 1692f provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

95.    Defendants violated §§ 1692d and 1692f when they refused to return exempt money they had taken by execution unless the plaintiff entered into a payment plan.

96.    As a direct and proximate result of Defendants' violation, Plaintiff has sustained

actual damages in an amount to be proved at trial.

### THIRD CLAIM FOR RELIEF

97.    Plaintiff repeats and re-alleges and incorporates by reference  paragraphs 1 - 85.

98.    15 U.S.C. § 1692e(10) prohibits a debt collector from using any "false, deceptive, or misleading . . . means in connection with the collection of any debt."

99.    NY CPLR 5222(d) requires the attorney for a judgment creditor to serve upon the judgment debtor within four days of service of a restraining notice a 5222(e) notice.  The notice advises the judgment debtor that Social Security, Child Support and other moneys are exempt from debt collection and the procedures for claiming the exemption.

100.    By failing to provide plaintiff with the requisite 5222(e) notice, Defendants violated 15 U.S.C. § 1692e(10) which prohibits a debt collector from using any "false, deceptive, or misleading . . . means in connection with the collection of any debt" and 15 U.S.C. § 1692f which provides that "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

101.    As a direct and proximate result of Defendants' violation, Plaintiff  has sustained actual damages in an amount to be proved at trial.

### FOURTH CLAIM FOR RELIEF

102.    Plaintiff repeats and re-alleges and incorporates by reference preceding paragraphs 1 - 85.

103.    As enumerated above in paragraphs 43- 89, Defendants violated § 349 of the New York General Business Law by using deceptive acts and practices in the conduct of their

business.

104.    As a result of these violations of § 349 of the General Business Law, Plaintiff is entitled to an injunction barring Defendants from engaging in the deceptive acts and practices, and to recover for her actual damages and costs.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that the Court:

1.    Assume jurisdiction of this action;

2.    Declare that Defendants actions violate 15 U.S.C. §§ 1692d, 1692e, and 1692f and New York General Business Law § 349.

3.    Enjoin Defendants from committing similar violations in the future;

5.    Award actual damages to the Plaintiff;

6.    Award statutory damages to the Plaintiff;.

7.    Award costs to the Plaintiff; and,

6.    Award such other and further relief that seems just and proper.

Dated: March 14, 2008

JOHN C. GRAY, ESQ. (9872 JG)
SOUTH BROOKLYN LEGAL SERVICES
Edward Josephson (7815 EJJ)
Johnson M. Tyler (5429 JT)
Attorneys for Plaintiffs
105 Court Street
Brooklyn, N.Y. 11201
(718) 237-5500

Page 17 of 17