# SOUTH BROOKLYN LEGAL SERVICES

Brooklyn Legal Services Corp. B • John C. Gray, Project Director
105 Court Street, Brooklyn, NY 11201 • (718) 237-5500 • Fax (718) 855-4189

April 10, 2008

The Honorable Richard Sullivan
U.S. District Court Judge
United State Court House
500 Pearl Street,
New York, NY 10007

ECF filing only

Re: Diane Miceli v. David J. Gold, P.C. et al,
  08 CV 2794

Dear Judge Sullivan,

Plaintiff submits this letter opposing defendants' April 1, 2008 request for permission to move to dismiss plaintiff's complaint.

## The Rule 12(b)(6) Standard

In order to withstand a motion to dismiss, a complaint must only plead "enough facts to state a claim for relief that is plausible on its face." Patane v. Clark, 508 F.3d 106 (2d Cir. 2007), citing, Bell Atlantic Corp. v. Twombly, --- U.S. ---, 127 S.Ct. 1955, 1974 (2007). The Court's task in reviewing a Rule 12( c) motion "is merely to assess the legal feasibility of the [claim], not to assay the weight of the evidence which might be offered in support thereof." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). Accordingly, the court must make its determination under Rule 12( c), "accepting the allegations in the amended complaint as true and drawing all reasonable inferences in favor of the nonmoving party." Patel v. Searles, 305 F.3d 130 (2d Cir. 2002); D'Alessio v. New York Stock Exchange, Inc., 258 F.3d 93 (2d Cir. 2001).

## The Third Cause of Action Is Timely

Defendants' first argument is that Plaintiff's third cause of action is barred by the statute of limitations. This argument has no merit. The third cause of action alleges that the defendants failed to serve a NY CPLR 5222(e) notice on the plaintiff which would have advised her of her exemption rights and how to exercise them. Plaintiff's Complaint, ¶¶ 97-101. Service of such notice must be done within four days of service of the restraining notice. NY CPLR 5222(d), Plaintiff's Complaint, ¶ 44. Here, plaintiff alleges that defendants issued a restraining notice dated March 14, 2007 on North Fork Bank, but never thereafter on the plaintiff as required by CPLR 5222(d). Plaintiff's Complaint, ¶¶ 40,45,60. Therefore, not until *after* March 18, 2007 was the 5222(e) notice requirement allegedly violated. Here, plaintiff filed this action on March

17, 2008, less than a year after the violation began.

While Defendants argue that plaintiff did not commence this action until they were served a summons on March 25, 2008, the statute of limitations in a suit based on federal law stops running when the complaint is filed, not upon the service of the summons. Henderson v. United States, 517 U.S. 654, 657 n. 2 (1996).

Finally, for purpose of calculating when the statute of limitations begins to run, Plaintiff asserts that it began when the violation ended, on June 1, 2007, not March 19, the first day of the violation. Not until June 1, 2007 did Ms. Miceli ever receive a 5222(e) notice, and that was from the Marshal. Defendants continued to have an obligation to provide the 5222(e) notice even after their violation began on March 19, 2007.

### The First Cause of Action State Claims Under the FDCPA

Defendants' second argument is that they acted "within the boundaries of adversarial litigation" when they refused to release restrained money that was clearly exempt unless the plaintiff entered into a payment plan. Under the motion to dismiss standard, this court must assume plaintiff's following allegations are true: namely that the opening balance of the frozen account was $178 (Plaintiff's Complaint, ¶ 43), and that thereafter $1263 in exempt social security and child support payments were electronically deposited into the account (Plaintiff's Complaint, ¶ 50), and plaintiff had no income other than exempt Social Security needed to pay rent. (Plaintiff's Complaint, ¶ ¶ 31, 32 47.) In light of those allegations, conditioning the release of the exempt money upon the plaintiff entering into a payment plan would be unfair within the meaning of the Fair Debt Collections Practices Act (FDCPA.)

Indeed, the Social Security Act. Section 407(a) of the Social Security Act states that: "none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process." Moreover, the exempt character of Social Security payments is not lost when the money is deposited into an account. Philpott v. Essex County Welfare Board, 409 U.S. 413, 415 (1973). Further, when exempt Social Security payments are commingled in an account with non-exempt money, the funds remain exempt to the extent that they can be "reasonably traceable" to social security deposits. Heymann v. Brechner, No. 95 Civ. 1329, 1996 WL 580915, at * 7 (S.D.N.Y. Oct. 9, 1996.)

For this reason, an allegation that a debt collector placed a garnishment (freeze) on account it allegedly knew contained only exempt Social Security payments constituted a congnizable claim under the FDCPA surviving a motion to dismiss. Hogue v. Palisades Collection, LLC, 494 F.Supp.2d 1043, 1051 (S.D.Iowa,2007.) Here, plaintiff alleges that the Defendants maintained the restraint of exempt moneys after learning the account contained substantial exempt payments. Plaintiff's Complaint ¶52. Plaintiff's first claim for relief is therefore no different than that in Hogue, namely that one cannot knowingly seize and maintain the seizure of Social Security benefits in order to collect a debt.

### The Second and Fourth Causes of Action State Claims Under the FDCPA

With respect to the second and fourth causes of action, defendants likewise assert that once they executed upon the account, they were"within the boundaries of adversarial litigation" to either require the plaintiff to seek a hearing in civil court on the "status" of the moneys in the account or to condition the return of the exempt moneys upon plaintiff's entering a payment plan.

Defendants therefore are asserting that no FDCPA violation lies even if plaintiff proves her allegations that defendants retained "unequivocally" exempt moneys in hopes of forcing plaintiff to enter into a payment plan or, more simply, in hopes that the plaintiff would give-up and they could keep the exempt moneys. Plaintiff's Complaint ¶69, 70, 72-73, 75, 76, 82, 84.

Courts have denied summary judgment in FDCPA claims where debt collectors engaged in far less "adversarial" tactics designed to strip exempt payments from Social Security recipients. In Jordan v. Thomas & Thomas, Slip Copy, 2007 WL 2838474 (S.D.Ohio,2007), the debt collector restrained an account containing Social Security account for eight days, yet promptly released it upon receipt of proof of the exemption. Similarly, in Lee v. Javitch, Block & Rathbone, LLP, 484 F.Supp.2d 816 (S.D.Ohio,2007), the debt collector immediately released a restrained account upon receipt of proof from debtor's attorney. (For details about timing of the release, see Lee v. Javitch, Block & Rathbone, LLP, 522 F.Supp.2d 945, 949 (S.D.Ohio, 2007)(denying summary judgment motions of both parties.) Here, plaintiff's protracted loss of Social Security account despite defendants having what the New York Civil Court later described as "unequivocal" proof of the account's exempt status constitutes a valid claim. Lincoln Financial Services, Inc. v. Miceli, 17 Misc 3d 1109(A)(Nauusau Ct. Civ. Court 2007) WL 2917242.

To the extent that defendants are maintaining that they had legitimate reasons for wishing a court finding on the "status" of the executed upon moneys, the reasonableness of their beliefs is a factual matter that precludes summary judgment.

## Conclusion

For the above reasons, the defendants request for permission to file motions to dismiss should be denied.

Sincerely,

Edward Josephson, (7815 EJJ)
718-237-5500 or 5538

DAVID J. GOLD, P.C,
116 John St., Suite 3110,
New York, NY 10038
By Fax: 212-962-2919
and electronic ECF filing